1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT FOR THE

9

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CITY OF LOS ANGELES, a California Municipal Corporation, Acting By and Through its DEPARTMENT OF WATER AND POWER, | ) ) ) ) | 1:12CV1683 AWI SAB |
| Plaintiff, | ) ) ) | MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS |
| v. | ) ) | |
| GREAT BASIN UNIFIED AIR POLLUTION CONTROL DISTRICT; CALIFORNIA AIR RESOURCES BOARD; STATE OF CALIFORNIA, ex rel. STATE LANDS COMMISSION; UNITED STATES BUREAU OF LAND MANAGEMENT; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) ) ) ) ) ) ) | F.R.C.P. 12(B)(1) AND 12(B)(6)  Doc. Nos 27 and 33 |
| Defendants. | ) ) ) | |

This is an action for declaratory and injunctive relief by plaintiff City of Los Angeles by and through its Department of Water and Power ("City") against defendants California Air Resources Board ("CARB") and the State of California ex rel. State Lands Commission ("Commission") (collectively, the "State Defendants") and the Great Basin Unified Air Pollution Control District ("District"). The instant action is part of a long-running dispute between City and agencies having jurisdiction over air quality issues in the Owens Valley that have been exacerbated by the transfer of water to the Los Angeles basin that had

historically drained into Owens Lake..  The result of this transfer of water from the Owens

River and other tributaries to Owens Lake is the reduction of water level in the saline lake

and the corresponding expansion of the area occupied by dry lake bed (the "Playa") that is the

source of fine particulate air emissions that exceeds state and federal standards within the

District.  In its First Amended Complaint ("FAC"), City challenges the legal basis of yearly

fees it pays to mitigate particulate emissions that emanate from the Playa.  In the motions

currently before the court, District and the State Defendants seek dismissal of City's FAC on

both jurisdictional grounds and for failure to allege claims upon which relief can be granted.

Venue is proper in this court.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Beginning in 1905, the City of Los Angeles began securing land and the appurtenant

riparian rights to water in the Owens Valley.  By 1913 Los Angeles had completed a 233-

mile long aqueduct from the Owens Valley to Los Angeles and began transferring water that

had historically flowed into Owens Lake.  The Owens Valley and Owens Lake are in Inyo

County.  The transfer of water previously flowing into Owens Lake reduced the lake to a dry

bed that is an abundant source of very fine particulate matter less than 10 microns in diameter

that is readily blown into the air.

The federal Clean Air Act ("CAA"), 42 U.S.C. §§ 4701 et seq., establishes that

particulate matter less than 10 microns in diameter (PM-10) is a criteria pollutant and

establishes emissions standards for the control of this type of pollution.  Air samples taken in

the area administered for CAA purposes by District, including Alpine, Mono and Inyo

Counties, was found to contain levels of  PM-10 pollution substantially in excess of federally

established standards due in substantial part to the generation of dust from the dry Owens

Lake bed.  Where a state fails to meet "National Ambient Air Quality Standards"

("NAAQS") with regard to any listed pollutant, the CAA requires the state to develop and

implement a "State Implementation Plan" (SIP") to bring the offending air quality region

within NAAQS standards in a specified period of time.  City's FAC alleges that Defendant

District, the entity tasked with responsibility under the CAA to implement the SIP, attempted

to assert jurisdiction over City by way of writ of mandamus in the early 1980's. In 1983, the

California legislature, in consultation with the City of Los Angeles, promulgated section

42316 of the California Health and Safety Code (hereinafter "Section 42316"), which

authorized District to order City to undertake measures at City's expense to mitigate the

production of dust from the Owens Lake basin.  Although the suit for writ of mandamus was

dismissed following the promulgation of Section 42316, City alleges that the Section "does

not implicate, at all, the provisions of the CAA." Doc. # 21 at ¶ 32.

        The FAC alleges that in November 1998, District submitted a SIP for PM-10 control

within the Owens Valley Planning Area that "prescribes only three allowable mitigation

control measures that can be used to control PM-10 [emissions within the Owens Valley

Planning Area]: (1) shallow flooding; (2) managed vegetation; and (3) gravel cover." Doc. #

21 at ¶ 43.  City alleges that it has made numerous attempts to expand the list of options for

mitigation of PM-10 emissions but all such attempts have been refused.  The FAC does not

give any indication what mitigation techniques were requested and refused.

        The FAC alleges the 1998 SIP was revised in 2003 and identified a maximum control

area on Owens Lake of 29.8 square miles, within which mitigation measures assigned to City

were  "completed by City by the December 31, 2006, deadline set by the EPA in the 1998

SIP." Doc # 21 at ¶ 48.  In 2006, District "attempted to impose additional control

requirements on City, not under Section 42316, but instead under the CAA." Doc. 21 at ¶ 49.

City objected to the additional orders, but to settle the dispute, District and City entered into

an agreement (the "2006 Agreement") in which City agreed to expand mitigation measures

for which it was responsible under the 1998 SIP to a total of 43 square miles of the Playa.

Apparently a further SIP was developed in 2008 pursuant to which contingency measures for

additional mitigation would be imposed on City in the event the measures imposed by the

3

2006 Agreement failed to make reasonable progress toward attainment of NAAQS standards for PM-10 emissions.  City alleges that contingency measures have been imposed under the 2008 SIP in 2011 and 2012 that impose additional costs and duties on City.  City alleges that neither the 2003 SIP nor the 2008 SIP were approved by the EPA.

Defendants have filed a notice of related cases that have been filed in California superior courts.  Defendants contend that each of the cases filed in state court challenge the imposition of mitigation duties and associated fees under Section 42316 on grounds that are similar to or the same as the grounds advanced in this action.  So far as the court is aware, the state court cases are still pending.  The instant action was originally filed on October 12, 2012.  City's FAC was filed on November 9, 2012.  District and the State Defendants filed their motions to dismiss on December 18, 2012, and December 19, 2012, respectively.  City filed its opposition to District's and State's motions to dismiss on February 4, 2013.  Reply briefs were filed by District and State on February 19, 2013.  The federal Defendants were voluntarily dismissed with prejudice on February 20, 2013.  The matter was taken under submission as of February 25, 2013.

**LEGAL STANDARD**

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a motion to dismiss for lack of subject matter jurisdiction.  It is a fundamental precept that federal courts are courts of limited jurisdiction.  Limits upon federal jurisdiction must not be disregarded or evaded. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978).  The City has the burden to establish that subject matter jurisdiction is proper.  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over the action.  McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Fed. R. Civ. P. 8(a)(1).  When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the court is whether the

4

lack of federal jurisdiction appears from the face of the pleading itself.  Thornhill Publishing Co. v. General Telephone Electronics, 594 F.2d 730, 733 (9th Cir. 1979);  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F. 2d 884, 891 (3d Cir.1977); Cervantez v. Sullivan, 719 F. Supp. 899, 903 (E.D. Cal.1989), rev'd on other grounds, 963 F. 2d 229 (9th Cir.1992).

A defendant may also attack the existence of subject matter jurisdiction apart from the pleadings.  Mortensen, 549 F. 2d at 891. In such a case, the court may rely on evidence extrinsic to the pleadings and resolve factual disputes relating to jurisdiction.  St. Clair v. City of Chico, 880 F. 2d 199, 201 (9th Cir.1989); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir.1987); Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir.1983).  "No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Thornhill Publishing, 594 F.2d at 733 (quoting Mortensen, 549 F.2d at 891).

"In resolving a Rule 12(b)(1) motion [to dismiss] for lack of subject matter jurisdiction, unlike motions brought pursuant to Rule 12(b)(6), courts are generally free to consider relevant materials outside the pleadings. [Citations.]" Nat'l Comty. Reinvestment Coalition v. Nat'l Credit Union Admin., 290 F.Supp.2d 124, 131 (D.C. 2003).

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly").  While a court considering a motion to dismiss must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v.

5

McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be factual in nature.  See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in Iqbal for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1950).

## DISCUSSION

City's FAC originally alleged fourteen claim for relief.  City's first, second and third claims for relief implicate provisions of the CAA; the fourth claim for relief alleges violation of the Equal Protection Clause of the Fourteenth Amendment; the fifth claim alleges violation of the National Environmental Policy Act ("NEPA"); the eighth claim alleges violation of the National Historic Preservation Act; and City's fourteenth and final claim for relief is pursuant to the federal Quiet Title Act, 28 U.S.C. § 2409a.  All other claims for relief alleged in the FAC arise under state law.  It should be noted at the outset that the FAC does not allege any of the claims against an identified Defendant.  The court also notes that, although the Defendant parties set fourth somewhat different grounds, their common contention is that City has failed to allege, or is prevented from alleging, any claims arising under federal law that would give rise to federal subject matter jurisdiction.

6

During the pendency of the instant motions to dismiss, the Federal Defendants – Bureau of Land Management and Environmental Protection Agency – were dismissed with prejudice.  See Doc. # 41.  The court is not aware that any of the federal claims for relief set forth in the FAC were dismissed along with the dismissal of the federal Defendants.  However, the court does note that City's opposition to Defendants' motions to dismiss addresses specifically the claims arising under federal law alleged in City's first, third, and fourth claims for relief.  Because dismissal of the federal claims alleged in City's second, fifth, eighth and fourteenth claims for relief are not opposed and because they appear by inspection to have been directed at the Federal Defendants, those claims will be dismissed without further discussion.

As Defendant District points out, City's action is, at its core, a challenge to the authority of the State to promulgate Section 42316, and the authority of District to enforce its provisions.  Defendant District summarizes the provisions of Section 42316 as follows:

> Section 42316 is at the heart of this case. [. . . .] Section 42316(a) provides that the District may require the City to undertake reasonable measures to mitigate the air quality impacts of its diversion of water from Owens Lake based upon substantial evidence that the diversions cause violations of state or federal ambient air quality standards.  The District may also require the City to pay reasonable fees associated with the development of the mitigation measures and related air quality analysis.  In return the statute provides that the mitigation measures shall not affect the right of the City to divert the water.
>
> Section 42316(b) provides that the City may appeal the measures or fees imposed by the District to CARB, which will conduct an independent hearing on the validity of the measures or reasonableness of the fees.  Either the City or the District may challenge the CARB decision by filing a state court action under Cal. Civ. Proc. Code Section 1094.5, the standard state court procedure to challenge agency action.

Doc. # 27 at 12:16-13:3 (internal citations omitted).  City does not dispute Defendants' summary and the court finds the foregoing is an accurate representation of the provisions of Section 42316.

## I. Section 42316 Not Preempted by the Clean Air Act

The FAC alleges, correctly, that under the CAA, "states are charged with the primary

responsibility for controlling air pollution at the source 'consistent with the provisions' of the CAA. 42 U.S.C. § 1704(b)(4)." Doc. # 21 at ¶ 89. Pursuant to 42 U.S.C. § 7416, except for limited preemption of certain State regulation of moving sources not relevant here, "nothing in this chapter shall preclude or deny the right of any State or political subdivision thereof to adopt or enforce (1) any standard or limitation respecting emissions of air pollutants or (2) any requirement respecting control or abatement of air pollution; except that [. . .] such State or political subdivision may not adopt or enforce any emission standard or limitation which is less stringent than the standard or limitation under [a federally mandated] plan or section. Id. While City recognizes the broad scope of authority of states to craft plans to achieve NAAQS standards, they contend nonetheless that Section 42316 is preempted because the means of compliance provided by Section 42316 *conflicts* with the CAA because it impermissibly transfers responsibility for compliance from the "owner or operator" of the emitting facility to the City, which they contend is neither owner or operator of the Owens Lake Playa.

"The question of whether a certain state action is pre-empted by federal law is one of congressional intent. The purpose of Congress is the ultimate touchstone." Gade v. Nat'l Solid Waste Mgmt. Ass'n, 505 U.S. 88, 96 (1992) (internal citations and quotation marks omitted).

> Pre-emption may be either expressed or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. Absent explicit preemptive language, we have recognized at least two types of implied pre-emption: field pre-emption, where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, and conflict pre-emption, where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

Id. at 98 (internal citations and quotation marks omitted).

Congress' intent with regard the CAA is set forth at 42 U.S.C. § 7410. Of particular significance to this action, the section provides "that air pollution prevention (that is, the reduction or elimination, through any measures, of the amount of pollutants produced or

created at the source) and air pollution control at its source is the primary responsibility of the States and local governments." Subsection 7410(a)(3). In subdivision 7410(b), Congress declares that the purposes of the CAA are to; (1) protect and enhance the quality of the Nation's air resources, (2) "initiate and accelerate a national research and development program," (3) to provide "technical and financial *assistance* to State and local governments in connection with the development and execution of *their* air pollution prevention and control programs," and (4) to "encourage and *assist* the development and operation of regional air pollution prevention and control programs." Id. (italics added).

City opposes Defendants' motion to dismiss the preemption claim by arguing that Section 42316 "conflicts with the CAA's enforcement mechanism which expressly places responsibility on the 'owners' or 'operators' of stationary emission sources." Doc. # 39 at 6:16-19. City supports its contention that only "owners or operators" are responsible by referring to the use of those terms in the portion of the CAA that describes the elements of a SIP. In particular, City notes that a SIP may "require, as may be prescribed by the Administrator" "the installation, maintenance, and replacement of equipment, and the implementation of other necessary steps, by owners or operators of stationary sources to monitor emissions from such sources," 42 U.S.C. § 7410(a)(2)(F)(i), and to require the owner or operator of each major stationary source to pay a fee to the permitting authority to cover costs. 42 U.S.C. § 7410(a)(2)(L)(ii).

City argues that it is neither an owner or operator of the stationary facility (the Playa) and the State's attempt to place the duty of emissions control through Section 42316 on them is in contravention of Congress's intent. City's argument with regard to conflict preemption fails for two reasons. First, there is absolutely no indication that subsection 7410(a) evinces a congressional intent to confine a state's approach to mitigating its air quality problems by placing mitigation responsibilities solely on a technical class of persons called "owners or operators." The subsections cited by City *empower* states, through their implementation

9

plans, to pass the costs of monitoring pollutants and the costs incurred in the permitting process on to owners or operators in the form of permitting fees.  There is nothing in the language of the statutes cited or the purposes of the CAA itself that immunizes parties not technically classifiable as owners or operators from responsibility to mitigate discharges of pollutants that are caused by their actions.  There is also nothing in the language of the statutes cited or the purposes of the CAA that prohibit state legislatures from apportioning rights, responsibilities and costs through legislation so long as the legislation addresses the state's primary responsibility to bring its air quality within NAAQS standards.

Second, and perhaps more on point, there is no reason in law or logic that City should not be deemed by District an "operator" of the Playa in proportion to the area that is dry as a consequence of their activities upstream.  Except for that portion of the Owens Lake bed that would be dry if City diverted no water from its tributaries, the condition and extent of the Playa is determined by the extent of City's water transfer which is, under the terms of Section 42316, determined by the City alone.  Although the CAA does not define the term "operator" and case law addressing the issue is, at best, sparse; such cases as the court can find – which address the issue in the context of criminal and civil liability in asbestos removal cases – are not inconsistent with the proposition that an operator is the person or entity that has "significant or substantial or real control and supervision" over the activities causing the emissions.  United States v. Walsh, 8 F.3d 659, 663-664 (9th Cir. 1993) ("Walsh") (finding company supervisor in asbestos removal projects was an "operator" based on real control over activities causing airborne emissions even he did not own the property or the company).  The court finds that this definition is suitable here where it is solely the City's activities with regard to water transfer facilities (which it does own) that directly and predictably determine the emissions potential of hazardous pollutants downstream on land that it does not own.  What Walsh and the few cases like it teach is that, for purposes of the CAA, ownership or management of the land underlying a pollution source is mostly irrelevant to the question of

10

liability.  What is more determinative of liability is the identity of the people or entities that have control over the activities that directly or indirectly cause the pollution.  The court finds that City is a significant "operator" of the Playa for purposes of the mitigation requirements of the CAA.

In addition, while "polluter pays" is not a universal principal and may not be an important consideration in some contexts, see Beazer East, Inc. v. Mead Corp., 412 F.3d 429, 446-447 (3rd Cir. 2005) ("polluter pays principle is not primary policy consideration in contribution claims under CERCLA), in the context of the CAA Congress evinced the intent that the polluter should pay by the granting to the state broad powers to form implementation plans that are tailored to individual situations pursuant to subsection 7140.  The CAA also evinces support for the "polluter pays principle" by the commitment of government resources to hold "any person" liable through civil action for violation of the state's SIP pursuant to subsection 7413.

The court finds that Congress' use of the otherwise undefined term "owner or operator" is merely a way of granting to the states the explicit ability to include in their SIP's provisions to pass-through costs for monitoring and administration of their permitting program to those responsible for operation of single source emission facilities.  The court finds that in this context, Congress intended that the term "owner or operator" is to be construed broadly, as part of the state's authority to craft responses appropriate to identified problems, rather than narrowly, as a means of limiting the liability of entities whose actions are the actual cause of emissions in excess of allowable limits.  In promulgating Section 42316, California did by legislative enactment no more than what it was empowered to do under the CAA; it identified the entity whose activities are most central to the emission of high levels of a hazardous pollutant and tasked that entity with the responsibility to mitigate those emissions as a part of its overall plan to bring the level of emissions in the District to an acceptable level.  Whether one characterizes the placement of responsibility on City to carry

out and fund the mitigation strategy as emanating from state or federal law makes no difference since California was empowered to place that responsibility under either.

The court concludes that City's first claim for relief alleging preemption under the Clean Air Act is without merit.

**II. Other Claims for Relief Under Federal Law**

As noted above, the court finds that City's second, fifth, eighth and fourteenth claims for relief may be dismissed without further discussion because those claims are assumed to have been alleged against the Federal Defendants. City's remaining federal claims for relief require comparatively little discussion.

*A. Third Claim for Relief to Declare 2008 SIP Unenforceable*

Plaintiff's third claim for relief alleges that the 2008 SIP is unenforceable under the CAA because it fails to meet the standards for State Implementation Plans set forth at 42 U.S.C. § 7410(k). City alleges that the 2008 SIP is fundamentally flawed because City's mitigation efforts since 2000 aimed at reducing PM-10 emissions have failed to bring District's emissions of PM-10's within NAAQS standards. City alleges that the 2008 SIP "relied exclusively on Section 42316 to circumvent [requirements for the inclusion of enforceable emissions limitations and other control measures] when it prepared the 2008 SIP." Doc. # 39 at 8:2-3.

Defendant District's motions to dismiss City's third claim for relief admit the 2008 SIP has not been approved by EPA and is therefore not enforceable under federal law. However, District contends that what is being enforced is not the 2008 SIP, but the 2006 Settlement which is enforceable through Section 42316. In short, District contends that, as a state agency, it enforces state law, not federal law. City's opposition addresses District's contention by reasoning that, if the CAA preempts Section 42316, then the provisions of the 2006 Settlement are only enforceable through the CAA through the 2008 SIP, which is invalid.

12

The court, having found that the CAA does not preempt Section 42316, finds there is no basis for invalidating mitigation programs established under the 2006 Settlement nor is there any legal ground on which the enforcement under Section 42316 could be enjoined based on the requirements of the CAA. The court therefore finds Plaintiff's third claim for relief fails to state a legal basis upon which relief can be granted.

### B.  Fourth Claim for Relief Under Fourteenth Amendment

City's fourth claim for relief alleges that enforcement of Section 42316 results in violation of the Equal Protection and Substantive Due Process clauses of the Fourteenth Amendment. The claim is based on the contention that "Section 42316 denies the City and its water customers of the equal protection of the laws by creating an arbitrary classification that treats one entity, the City and its water customers, differently than other entities who are regulated as "sources" of air pollution under the CAA. Both State and District Defendants seek to dismiss City's Fourteenth Amendment claim on the ground this court should abstain pursuant to either <u>Younger v. Harris</u>, 401 U.S. 37 (1971), or <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943).

The basic idea behind the Defendant parties' assertions that the court should abstain from addressing the City's substantive Fourteenth Amendment claim is that California legislature, in enacting Section 42316, provided a specified pathway for administrative appeal and civil adjudication of "any measures or fees imposed by the [D]istrict." That pathway includes administrative appeal to CARB requiring an independent investigation by CARB of any complaint regarding the imposition of any measure or fee upon 30 days notice of same. Upon decision by the state board, either party "may bring a judicial action to challenge a decision" by CARB pursuant to Section 1094.5 of the California Code of Civil Procedure. Section 1094.5 provides that the decision of an administrative body may be reviewed in a superior court without a jury under a petition for writ of mandamus. The section also provides the relevant standards of review, provisions for stay and the admission of previously

13

unavailable evidence.  Defendants allege, and City does not dispute that City has raised

Fourteenth Amendment claims, including equal protection and substantive due process

claims in the pending state court case or cases.

### 1. *Younger Abstention*

Pursuant to Younger v. Harris, 401 U.S. 147 (1971), a federal court should generally

"abstain from granting injunctive relief that would interfere with pending state judicial

proceedings. Martinez v. Newport Beach City, 125 F.3d 777, 781 (9th 1997) (citing Younger,

401 U.S. at 40-41).  "Abstention is appropriate in favor of state proceedings if (1) the state

proceedings are ongoing, (2) the proceedings involve important state interests, and (3) the

state proceedings provide the plaintiff an adequate opportunity to litigate federal

constitutional questions."  Aiona v. Judiciary of State of Hawaii, 17 F.3d 1244, 1248 (9th Cir.

1994).  To these three elements, the Ninth Circuit found a fourth was implied: "(4) the federal

court action would 'enjoin the [state] proceeding or have the practical effect of doing so.'"

Portrero Hills Lanfill, Inc., 657 F.3d 876, 882 (9th Cir. 2011) (quoting AmerisourceBergen

Corp. v. Roden, 495 F.3d 1143, 1148-1149 (9th Cir. 2007)).

Although abstention under Younger was typically applied to limit a district court's

intervention in pending criminal cases, the Supreme Court in New Orleans Public Service,

Inc. v. New Orleans City Council, 491 U.S. 350 (1989) ("NOPSI"), explained how the

doctrine has been expanded to limit federal court intervention in civil cases that are of the

sort to which Younger applies.  Id. at 367-368.  Of significance to the instant analysis, the

NOPSI court explained that, in examining whether the proceeding pending in state court

involves important state interests, the district court looks beyond the state's narrow interest in

the *outcome* of a particular review to discern "the importance of the generic proceedings to

the State."  Id. at 365.  The NOPSI court accepted as true for purposes of that decision that,

for purposes of Younger analysis, a state's process for judicial review of an agency

determination is an "uninterrupted whole" such that the disappointed party may not "procure

federal intervention by terminating the state judicial process prematurely." Id. at 369. "'[A]

necessary concomitant of Younger is that a party [wishing to contest in federal court the

judgment of a state judicial tribunal] must exhaust his state appellate remedies before seeking

relief in the District Court.' [Citation.]" Id. (quoting Huffman v. Pursue, Ltd., 420 U.S. 592,

608 (1975)).

City contends that Younger does not apply in this action because the state

"proceeding" in question here is not of the sort that requires a district court to abstain under

Younger.  The Supreme Court, in Middlesex County Ethics Comm. v. Garden State Bar

Ass'n, 475 U.S. 423 (1982), held that the state proceeding has sufficient state interest to

require the application of Younger if the proponent could demonstrate that the state

proceedings were "necessary for the vindication of important state policies or for the

functioning of the state judicial system." Id. at 432.  In Potrero Hills, the Ninth Circuit

explained that every extension of Younger requires a "determination whether federal

adjudication would offend the doctrine's animating principles, foremost of which is 'the

notion of "comity," that is, a *proper respect for state functions*.'" Potrero Hills, 657 F.3d at

882 (quoting Younger, 401 U.S. at 44, italics added in Potrero Hills).  The Potrero Hills court

further explained:

> The key to determining whether comity concerns are implicated in an ongoing
> state proceeding – and thus whether the second Younger requirement – is to
> ask whether federal court adjudication would interfere with the state's ability
> to carry out its basic executive, judicial, or legislative functions.  Unless
> interests "vital to the operation of state government" are at stake, federal
> district courts must fulfill their "unflagging obligation" to exercise the
> jurisdiction given them.

Id. at 883 (quoting Miofsky v. Superior Court, 703 F.2d 332, 337 (9th Cir. 1983)).  "Thus,

when the state seeks to enforce a law of significant state importance through judicial or quasi-

judicial action, we have found abstention necessary to protect the state's unique interest in

exercising its basic executive functions in a wide range of civil contexts." Id. at 884.

At the outset, it is important to note that the first, third and fourth requirements for

15

application of <u>Younger</u> abstention are not disputed; that is, there appears to be no dispute that there is at least one ongoing state proceeding, that an opportunity to address the federal (Fourteenth Amendment) issue is available there, and that this court's ruling on the enforceability of Section 42316 would have the effect of enjoining the state proceeding(s). Thus the only issue raised by City's opposition to the application of <u>Younger</u> to City's third claim for relief is the issue of whether the proceedings in state court under Section 42316 implicate important state interests.

The parties' undisputed background information with regard to the transfer of water from the Owens River Valley makes the overall purpose of Section 42316 self-evident. The Section was promulgated in an effort to address an important and rather unique source of particulate air pollution that came into existence substantially through the water-exporting activities of City. The Playa is a major source of dust that causes citizens up to 200 miles distant to experience hazardous levels of PM-10 pollution. In apportioning the costs of mitigation, Section 42316 reflects the commonly applied principle that one who benefits by causing hazardous pollution, the effects of which are suffered by others, is obliged to mitigate or pay the costs thereof. Common notions of fairness make the application of the "polluter pays" principle particularly appropriate in this unusual situation where City's water transfer activities are not only a substantial cause of the pollution but are also a substantial reason the Owens Valley has not been able to experience economic development to an extent that would allow it to contribute significantly to the mitigation effort. In sum, Section 42316 is California's legislative response to promote its important interest in the promotion of citizens' health, balancing that interest with its interest in securing adequate water for its metropolitan areas and apportioning the costs that arise from the balancing of those interests in a way that assures both effectiveness and political acceptability.

The court finds it is abundantly clear that Section 42316 is absolutely integral to the State's legislative and administrative functions in that it represents the ability of the state to

balance two of its most crucial functions; the supply of water within the State's extensive and complex water distribution system and the promotion of public health through air pollution control.  Notwithstanding the evident importance of Section 42316 in the State's efforts to manage both air pollution and water availability, City contends <u>Younger</u> should not apply because enforcement of Section 42316 does not put the State in an enforcement posture.  As City rightly observes, the Ninth Circuit's decision in <u>Potrero Hills</u> opined that "[w]here the state is in an enforcement posture in the state proceedings, the 'important state interest' requirement is easily satisfied, as the state's vital interest in carrying out its executive functions is presumptively at stake."  657 F.3d at 883-884.  City opposes application of <u>Younger</u> abstention by contending that:

> [T]he District's application of Section 42316 is an improper exercise of the District's rulemaking authority under the California Health And Safety Code, which is an action that is legislative in nature.  For example, the 2011 [Supplemental Control Requirement Determination] requires the city to construct additional dust control measures, changing the City's existing obligations, and creating new obligations.  Thus the 2011 SCRD is a legislative action that "looks to the future and changes existing conditions by making a new rule to be applied thereafter."  *See NOPSI*, 491 U.S. at 370-371 (quoting *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226 (1908).

Doc. # 39 at 12:5-11.

The court disagrees with City's characterization of the state proceedings under Section 42316.  City's argument seeks to analogize the issuance of sequential Supplemental Control Requirement Determinations ("SCRD's") with rate-making, which was characterized in <u>NOPSI</u> as legislative in nature in that it makes rules for the future rather than enforces rules from the past.  The court disagrees.  The "Rule" in this instance is the level of PM-10 pollution that is permissible within the Owens Valley Planning Area.  That level is set by California through its adoption of standards set by the CAA through the NAAQS.  Section 24316 is properly seen as a *response* to rule making that is carried out at the federal and state level, not as rulemaking itself.

Section 42316 is a particular piece in California's overall effort to attain compliance

with state and NAAQS PM-10 emission standards in the unusual context where there is a localized source and a localized authority, but the authority and the source are geographically separated.  In this regard, Section 42316 is essentially adjudicatory in nature.  As City points out, Section 42316 confers jurisdiction by District over City for the purpose of gathering evidence to make a determination of reasonable mitigation measures and to determine the apportionment of costs for those measures according to substantial evidence.  The Section provides for hearing and determination by District, neutral review by CARB and further appeal according to Section 1094.5 of the California Code of Civil Procedure in California Superior Court.

The court concludes that the proceedings currently underway[1] in Los Angeles and/or Kern County pursuant to Section 42316 involve important state interests as that term is defined in NOPSI and its progeny such that the court is obliged to abstain from the exercise of jurisdiction over City's fourth claim for relief under Younger..  Because City's fourth claim for relief under the Fourteenth Amendment seeks declaratory and injunctive relief rather than damages, the proper course of action for this court is to dismiss, rather than stay, the claim for relief.  Gilbertson v. Albright, 381 F.3d 965, 968 (9th Cir. 2004).  City's fourth claim for relief will therefore be dismissed.

### *2.  Burford Abstention*

In addition to contending that abstention is proper under Younger as to City's fourth claim for relief, District also contends that abstention is also proper under Burford v. Sun Oil Co., 319 U.S. 315 (1943).  In NOPSI, the Supreme Court summarized the requirements of the Burford doctrine as follows:

> Where timely and adequate state-court review is available, a federal court

---

[1]    City asserts in a footnote that it does not concede that there are proceeding underway in Superior Court that are pursuant to Section 42316 because, City contends, Section 42316 (b) "limits the types and process of administrative appeals before the CARB."  Doc. # 39 at n.3.  City does not, however, develop that argument in their opposition and the Court finds there is no basis upon which the court can conclude that the case or cases currently before the Superior Court are not "underway" within the framework of Section 42316.

sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

NOPSI, 491 U.S. at 361 (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814 (1976)). The parties do not appear to dispute that the Ninth Circuit has put a slightly more restrictive gloss on the Burford doctrine, requiring a showing that (1) the state must have "'concentrated suits involving the local issue in a particular court; [second,] the federal issues are not easily separable from complicated state law issues with which state courts may have special competence; and [third,] that federal review might disrupt state efforts to establish a coherent policy.'" Doc. # 39 at 13:4-7 (quoting Tucker v. First Md. Savings & Loan, Inc., 942 F.2d 1401, 1405 (9th Cir. 1991)).

City contends first that abstention under Burford is inappropriate where preemption is an issue in the claim because such abstention would be an implicit ruling on the merits. City's argument is not persuasive in this regard because the court has ruled on the merits of City's preemption claim and has found that the CAA does not preempt Section 42316. Second, City opposes the application of Burford abstention in this case by contending that "the case does not involve judicial review of a complex state administrative decision that is subject to a concentrated appeal process in a specialized state court." Doc. # 39 at 13:23-24.

In their opposition to District's argument for Burfort abstention, City cites Kirkbridge v. Continental Cas. Co., 933 F.2d 729 (9th Cir. 1991) for the proposition that Burford abstention is inappropriate where the state has not created what City contends must be a specialized court; that is, a court not of general jurisdiction. City's reliance on Kirkbridge for the proposition that the appeal process must be concentrated in a *specialized* state court that is not a court of general jurisdiction is problematic. The standard set forth in Tucker, as quoted above, provides that a suit arising from an appeal of agency action be concentrated in

19

a *particular* court, not a *specialized* court.  The "specialized court" found lacking in

Kirkbridge, referred the court's observation there was no adjudicatory structure outside of the

general California court system "to resolve disputes over insurance policy coverage."  993

F.2d at 734.  What the court interprets Kirkbridge to illustrate is that, where California has

not legislated the existence of an *administrative* structure to resolve a particular type of

dispute (such as insurance coverage), that fact is sufficient to demonstrate that the state

proceeding does not concern a local issue implicating "complicated state law issues with

which state courts may have special competence."  Tucker,  942 F.2d at 1405.  The court

does not find Kirkbridge to stand for the proposition that where California legislature *has* set

up an administrative adjudicative process to deal with *a particular* problem or issue, that is

must also set up a specialized and separate court for judicial review in order for

Burford abstention to be appropriate.

Section 42316 provides a very specialized forum for the resolution of disputes arising

from District's decisions in the District itself, in the first instance, with independent review at

the level of CARB.  While *judicial* review of CARB's decision is committed to a court of

general jurisdiction, even that judicial review is confined to a *particular* court – the Superior

Court of Los Angeles County.  This is true because the only entity authorized by Section

42316 to appeal measure or fees imposed by the district is the City of Los Angeles which lies

in the jurisdiction of the Superior Court of that county.  The court finds that the

administrative and judicial review process established by Section 42316 is sufficiently

particularized to fall within the requirements for Buford abstention as set forth in Kirkbridge.

Although City does not argue for or against the second and third of the factors in

Tucker, the court has no difficulty in finding that both are met.  The second factor – federal

issues are not easily separable from complicated state law issues with which state courts may

have special competence – is met because, as discussed, PM-10 emissions are an issue

consigned by federal law to state solutions which have been applied to an intensely local

1  context through Section 42316.  As to the third factor, there is no question that City's

2  challenge to Section 42316 on Fourteenth Amendment grounds is disruptive to California's

3  approach to the problem of particulate air pollution reserved to it under the CAA.  The court

4  therefore finds abstention and dismissal of City's fourth claim for relief is appropriate under

5  Burford as well as under Younger.

6  **CONCLUSION AND ORDER**

7  Following the dismissal with prejudice of the Federal Defendants, the court, as noted,

8  finds that the only federal claims remaining in this action are City's first, third and fourth

9  claims for relief.  The court has determined that each of the three are subject to dismissal; the

10  first on substantive grounds and the third and fourth on grounds of abstention.  There being

11  no other claims arising under federal law, the court finds federal subject matter jurisdiction is

12  now lacking.  The court declines to assert pendent subject matter jurisdiction over City's state

13  law claims.

14

15  THEREFORE, it is hereby ORDERED that Defendants' motion to dismiss City's

16  First Amended Complaint is hereby GRANTED.  City's First Amended Complaint is hereby

17  DISMISSED in its entirety without prejudice as to all remaining Defendants.

18

19  IT IS SO ORDERED.

20

21  Dated:   May 1, 2013                          _____

    SENIOR  DISTRICT  JUDGE

22

23

24

25

26

27

28                                         21